## COMPLAINT

Rolanzo White, Esq. (Bar No. #21873)

White and Ng LLC

12410 Milestone Center Drive, Suite 600
Germantown, Maryland 20876

Rolanzo@whiteng.co

Attorney for Plaintiff
*Anton Dawson*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## CIVIL DIVISION

ANTON DAWSON,

19004 Leatherbark Dr.

Germantown, Maryland 20874

Plaintiff(s),

v.

OPTION ALPHA LLC

78 SW 7th Street, Suite 500

Miami, FL 33130,

&

KIRK DU PLESSIS,

634 Maple St

Indiana, PA 15701-3147

Defendant(s).

Case No.

COMPLAINT

Judge

Jury Trial Demanded

1

## COMPLAINT

Plaintiff Anton Dawson ("Plaintiff" or "Dawson") by his attorneys, Rolanzo White, Esq. and White and Ng LLC, files this Complaint against Defendant Option Alpha ("Defendant Option Alpha" or "Option Alpha") and Kirk Du Plessis ("Defendant Plessis" or "Plessis") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action concerning the Defendants' crypto currency scheme to fraudulently induce investors to invest a crypto currency scheme promising large returns which we allege the Defendants never intended to perform.

2. Plaintiff is seeking complete repayment of the initial investment, trading fees, and benefit of the bargain as promised by the Defendants.

## THE PARTIES

3. Plaintiff Anton Dawson is an individual residing in Montgomery County, Maryland and a citizen of the state of Maryland.

4. Defendant Option Alpha is a corporation based in Miami, Florida, and actively conducts business the State of Maryland.

5. We have reason to believe that Defendant Kirk Du Plessis is an individual residing in Miami Florida and a citizen of the State of Indiana. Defendant Plessis is the Chief Executive Officer of Option Alpha, LLC.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action under 15 USCS § 80b-6, and states law claims regarding fraud and breach of contract.

7. The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. Therefore, this Court has jurisdiction over this dispute under 28 U.S.C. § 1331.

8. This Court has personal jurisdiction over Defendants because Defendants regularly conducts business in the State of Maryland.

9. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because this judicial district is where a substantial part of the events or omissions giving rise to the claim occurred.

**FACTS**

10. On or about May 15, 2022, Defendant Plessis and Plaintiff entered an agreement to *"build a solid capital foundation by helping out with trade while they [client] watch, learn and at the same time build their capital."*

11. Defendant Plessis explained that the program worked as follows: (1) *An investor chooses an investment plan as $550 (minimum). (2) Clients deposit their investment through Option Alpha's available methods of payments such as Bitcoins; (3) High tech P-T bots that manipulate the normal reliable signal gives the client maximum profits; (4) Option Alpha receives 15% of profits the client's investment earns; (5) Once profit is ready, Client provides account details for payment and Option Alpha dispatch clients' profits immediately to his account.*

    *NOTE: Our algorithm is always accurate. We do not gamble and there are no risks at all. We ensure our clients get 300% profit for our survival.*

    *Your account is always open for you to withdraw your money once you feel.*

12. Defendant Plessis then provided Plaintiff with a link to Coinmama.com to create his crypto wallet. He explained that once the funds were transferred to Bitcoin, he was to transfer money to Defendant Plessis's crypto account: **bc1qhu4g4xugrn35uuhsdeua9jkw95tp9ez7ddft7h**

13. Coinmama did not work for Plaintiff, so Defendant Plessis then told him to try **Changelly** to buy the cryptocurrency for the investment. This method also was unsuccessful, so Plaintiff was told to go to a *Bitcoin ATM* to buy the bitcoin for the investment; however, this also failed.

14. On May 20, 2022, Plaintiff informed Defendant Plessis that he could not move forward due to difficulties with the payment. Defendant Plessis was insistent and continued to provide Plaintiff with a way to make this payment. Defendant Plessis went on to claim that they had not raised enough money from investors, so they had an additional two weeks to complete the investment.

15. On May 21, 2022, Defendant Plessis revisited Plaintiff, stating that he could use the Cash App to buy and send bitcoin. Defendant Plessis messaged and called Plaintiff for the next 3 days without a reply, trying to get him to make his "investment."

16. On May 24, 2022, Plaintiff asked Defendant Plessis to stop contacting him about the investment and said he would move forward when he was ready. Plaintiff was then told the "program" was still "on" until next week.

3

17. On May 27, 2022, Plaintiff was able to purchase $2,104.55 in bitcoin and sent Defendant Plessis the principal payment. After Defendant Plessis received the payment, he began "trading," and just a day later, he claimed that he made $400.00 in profit but needed Plaintiff to increase his capital for Defendant Plessis to make bolder trades to accumulate more profits.

18. When Plaintiff revealed that he had a small trading account of under $15,000.00, Defendant Plessis "strongly advised" him to liquidate his trading account and invest it to increase his profits. He made his suggestion despite showing no evidence of the profits made from the initial investments other than his words. Plaintiff refused despite Defendant Plessis insistence that he'd be able to pay more attention to his account if he was a bigger investor.

19. On May 29, 2022, Defendant Plessis once again claimed that he made over $700.00 in profit without any supporting evidence and made another push to force Plaintiff to invest more money.

20. On June 1, 2022, Plaintiff agreed to invest an additional $2,618.40. Despite Plaintiff already investing an additional $2,618.40, Defendant Plessis insisted on Plaintiff liquidating his trading account and investing the money as well. Once again, Plaintiff refused and instead invested an additional $2,050.00 on June 10, 2022.

21. During this entire time, Defendant Plessis continued to insist Plaintiff increase his investment capital and bring in an additional $8,000 to $10,000. When Plaintiff refused to budge, Defendant Plessis tried to have Plaintiff refer his friends to his service as well. Plaintiff refused and said that he had to see the profits before referring to his friends. When Defendant Plessis read this, he said that Plaintiff can show them the profits on his dashboard since he was "still trading."

22. On June 18, 2022, Defendant Plessis claimed that he made over $11,000 in profit. Plaintiff asked if Defendant Plessis could roll some of his profits into the principal to get his account to the 10k mark. Plaintiff stated that he ultimately wanted to receive his money back and that he wanted to receive at least $7,000.00 back.

23. Defendant Plessis refused, claiming that since Plaintiff's account is linked to his trading tool, he had not charged 15% for his service yet, and if Plaintiff removes his money, he will receive a lot less. Following this, he encouraged Plaintiff to invest more money without seeing proof of profit from his prior investments. Plaintiff then invested an additional $1,040.00 on June 20, 2022.

24. On June 24, 2022, Plaintiff asked to retrieve the profits from his earlier investments. Despite notifying Defendant Plessis, the profits were not delivered to his account. Instead, Plaintiff was informed that he had to pay a conversion fee of $359.00 for immediate withdrawal to his wallet. In addition, he was informed that he had to pay a total of $4,125.00 as "trading fees" for Defendant Plessis's services.

## **FIRST CLAIM FOR RELIEF**

### **(Prohibited Transactions by Investment Advisers)**

### **(Against Defendant Kirk Du Plessis)**

25. The Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 24.

26. Under 15 USCS § 80b-6, it is unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (1) to employ any device, scheme, or artifice to defraud any client or prospective client; (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client; (3) acting as principal for his own account, knowingly to sell any security to or purchase any security from a client, or acting as broker for a person other than such client, knowingly to effect any sale or purchase of any security for the account of such client, without disclosing to such client in writing before the completion of such transaction the capacity in which he is acting and obtaining the consent of the client to such transaction. The prohibitions of this paragraph (3) shall not apply to any transaction with a customer of a broker or dealer if such broker or dealer is not acting as an investment adviser in relation to such transaction; or (4) to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative. The Commission shall, for the purposes of this paragraph (4) by rules and regulations define, and prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative.

27. Here, Defendant Plessis acted as an investment advisor while enticing by soliciting investment in his *investment plan* to grow their investment in cryptocurrency.

28. Defendant Plessis employed devices/online platforms and engaged in several transactions to defraud and mislead Plaintiff into investing in his plan.

29. At multiple points, Plaintiff demanded that Defendant Plaintiff fulfill its obligations, but Defendant refused.

30. As a result of Defendant Plessis' actions, Plaintiff has been damaged in an amount to be determined by the court, but no less than 25,500.00.

## SECOND CLAIM FOR RELIEF

### (Fraudulent Inducement)

### (Against Defendant Plessis)

31. The Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 30.

32. A fraudulent inducement of the contract claim arises when a party uses deceit to induce another party to enter a contract or transaction. First Union Nat'l Bank v. Steele Software Sys., 154 Md. App. 97, 134, 838 A.2d 404 (2003). Deceit is defined as something committed by false pretenses and deliberate deception, since "when one person makes a promise to another as an inducement for a change of position, the promisee has the right to assume that the promiser has an existing intention to fulfill his promise." Appel v. Hupfield, 198 Md. 374, 382, 84 A.2d 94 (1951); Union Nat'l Bank, 154 Md. App. at 135 (quoting Appel, 198 Md. at 382).

33. There are five elements to establish a claim for fraudulent inducement: (1) that the representation made is false; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the plaintiff; (4) and (5) that the plaintiff suffered actual damage directly resulting from such fraudulent misrepresentation. Avramidis v. Theo, 2022 Md. App. LEXIS 188; Dynacorp, 208 Md. App. at 452 (quoting First Union Nat'l Bank, 154 Md. App. at 134); accord Martens Chevrolet, Inc. v. Seney, 292 Md. 328, 333, 439 A.2d 534 (1982) (quoting Gittings v. Von Dorn, 136 Md. 10, 15-16, 109 A. 553 (1920)); Sass v. Andrew, 152 Md. App. 406, 429, 832 A.2d 247 (2003).

34. Defendant Plessis made false statement about the investment plans and the expected returns.

35. Defendant Plessis either knew their statements were false or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge.

36. Defendant Plessis' statements were made with the goal of defrauding Plaintiff out of thousands of dollars.

37. Plaintiff relied upon the misrepresentation and had a right to rely upon it in the full belief of its truth, and that Plaintiff would not have invested in the investment plan if the Defendant Plessis did not make misleading statements.

38. As a result of Defendant Plessis' false and misleading statements, Plaintiff has lost approximately $11,937.95 and has not received the benefit of investment of approximately $13,000 in profit.

**THIRD CLAIM FOR RELIEF**

**(Breach of Contract)**

**(Against Defendant Plessis)**

39. The Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 38.

40. On or about May 15, 2022, Plaintiff and Defendant Option Alpha entered a contract by which Plaintiff stated that they would *"build a solid capital foundation by helping out with trade while they [client] watch, learn and at the same time build their capital."* in exchange for increasing amounts of investment from Plaintiff and a percentage of whatever proceeds came from the investments.

41. Plaintiff has duly performed all of his obligations and duties under the contract and invested money as directed by Defendant Option Alpha.

42. Defendant has breached the contract by failing to return Plaintiff the agreed upon sum of approximately $13,000 in profit, despite promising to release Plaintiffs money to him.

43. At multiple points, Plaintiff demanded that Defendant fulfill its obligations under the contract, but Defendant refused.

44. As a result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be determined by the court, but no less than $25,500.00.

**FOURTH CLAIM FOR RELIEF**

**(Fraudulent Inducement)**

**(Against Defendant Option Alpha)**

45. The Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 44.

46. A fraudulent inducement of the contract claim arises when a party uses deceit to induce another party to enter a contract or transaction. First Union Nat'l Bank v. Steele Software Sys., 154 Md. App. 97, 134, 838 A.2d 404 (2003). Deceit is defined as something committed by false pretenses and deliberate deception, since "when one person makes a promise to another as an inducement for a change of position, the promissee has the right to assume that the promiser has an existing intention to fulfill his promise." Appel v. Hupfield, 198 Md.

374, 382, 84 A.2d 94 (1951); Union Nat'l Bank, 154 Md. App. at 135 (quoting Appel, 198 Md. at 382).

47. There are five elements to establish a claim for fraudulent inducement: (1) that the representation made is false; (2) that its falsity was either known to the defendant, or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the plaintiff; (4) and (5) that the plaintiff suffered actual damage directly resulting from such fraudulent misrepresentation. Avramidis v. Theo, 2022 Md. App. LEXIS 188; Dynacorp, 208 Md. App. at 452 (quoting First Union Nat'l Bank, 154 Md. App. at 134); accord Martens Chevrolet, Inc. v. Seney, 292 Md. 328, 333, 439 A.2d 534 (1982) (quoting Gittings v. Von Dorn, 136 Md. 10, 15-16, 109 A. 553 (1920)); Sass v. Andrew, 152 Md. App. 406, 429, 832 A.2d 247 (2003).

48. Defendant Option Alpha, through its CEO and authorized agent, made false statement about the investment plans and the expected returns.

49. Defendant Option Alpha either knew their statements were false or the misrepresentation was made with such reckless indifference to the truth as to be equivalent to actual knowledge.

50. Defendant Plessis' statements were made with the goal of defrauding Plaintiff out of thousands of dollars.

51. Plaintiff relied upon the misrepresentation and had a right to rely upon it in the full belief of its truth, and that Plaintiff would not have invested in the investment plan if the Defendant Plessis did not make misleading statements.

52. As a result of Defendant Plessis' false and misleading statements, Plaintiff has lost approximately $11,937.95 and has not received the benefit of investment of approximately $13,000 in profit.

**FIFTH CLAIM FOR RELIEF**

**(Breach of Contract)**

**(Against Defendant Option Alpha)**

53. The Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 52.

54. On or about May 15, 2022, Plaintiff and Defendant Option Alpha entered a contract by which Plaintiff stated that they would *"build a solid capital foundation by helping out with trade while they [client] watch, learn and at the same time build their capital."* in exchange

for increasing amounts of investment from Plaintiff and a percentage of whatever proceeds came from the investments.

55. Plaintiff has duly performed all of his obligations and duties under the contract and invested money as directed by Defendant Option Alpha.

56. Defendant has breached the contract by failing to return Plaintiff the agreed upon sum of approximately $13,000 in profit, despite promising to release Plaintiffs money to him.

57. At multiple points, Plaintiff demanded that Defendant fulfill its obligations under the contract, but Defendant refused.

58. As a result of Defendant's breach of contract, Plaintiff has been damaged in an amount to be determined by the court, but no less than $25,500.00.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants, granting Plaintiff the following relief:

1. The entry of judgment in favor of the plaintiff on each and every cause of action;

2. The award of the requested $25,500.00;

3. The award of costs of the suit and attorney's fees; and

4. Such other relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: October 19, 2022

Respectfully submitted,

/s/ ROLANZO WHITE/
Rolanzo White (Bar No. #21873)
White and Ng LLC
12410 Milestone Center Drive, Suite 600
Germantown, Maryland 20876
Telephone: (202) 788-6060
Facsimile: (202) 916-8998
Email: Rolanzo@whiteng.co
Attorneys for Plaintiff